1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

LARRY R. DOW,

Civil No.    08CV2243-MMA (POR)

11

Plaintiff,

**REPORT AND RECOMMENDATION**
**DENYING PLAINTIFF'S MOTION**

12

v.

**FOR SUMMARY JUDGMENT AND**
**GRANTING DEFENDANT'S CROSS**
**MOTION FOR SUMMARY**

13

MICHAEL J. ASTRUE,

**JUDGMENT**

14
15

Defendant.

**[Document No. 10]**
**[Document No. 12]**

16
17

**I. INTRODUCTION**

18

On December 3, 2008, Plaintiff Larry R. Dow ("Plainitff") filed a complaint pursuant to

19

section 205(g) of the Social Security Act ("SSA") requesting judicial review of the final decision of

20

the Commissioner of the Social Security Administration ("Commissioner" or "Defendant")

21

regarding the denial of Plaintiff's claim for disability insurance and supplemental security income

22

benefits.  (Doc. 1.)  On April 9, 2009, Plaintiff filed a motion for summary judgment regarding his

23

205(g) claim.  (Doc. 10.)  Plaintiff contends the Administrative Law Judge ("ALJ") failed to

24

properly consider all of the available relevant medical evidence and inappropriately minimized

25

certain medical evidence contained within the Administrative Record.  (Doc. 102- at 2-6.)  Further,

26

Plaintiff contends the ALJ improperly considered Plaintiff's subjective complaints and failed to

27

conduct a credibility analysis.  (Doc. 10-2 at 6-10.)

28

//

1    On May 7, 2009, Defendant filed a cross-motion for summary judgment (Doc. 12) and

2    opposition to Plaintiff's motion for summary judgment.  (Doc. 13.)  On May 21, 2009, Plaintiff filed

3    a reply to Defendant's opposition to Plaintiff's motion for summary judgment (Doc. 14) and an

4    opposition to Defendant's cross motion for summary judgment.  (Doc. 15.)

5         The Court finds the motions appropriate for submission on the papers and without oral

6    argument pursuant to Local Rule 7.1(d)(1).  For the reasons set forth herein, the Court

7    RECOMMENDS Plaintiff's Motion for Summary Judgment (Doc. 10) be DENIED and Defendant's

8    cross motion for summary judgment (Doc. 12) be GRANTED.

9                              **II. PROCEDURAL BACKGROUND**

10        On May 9, 2005, Plaintiff filed an initial application for Disability Insurance Benefits and

11   Supplemental Security Income.  (Administrative Record[1] 102-105.)  After a July 5, 2006 denial at

12   the initial determination (AR 38-42) and a February 2, 2007, denial on reconsideration (AR44-48),

13   Plaintiff filed a timely request for hearing before an administrative law judge (hereinafter "ALJ") on

14   March 29, 2007.  (AR 50.)  On June 16, 2008, Plaintiff testified via video, represented by William

15   M. Kuntz, at an administrative hearing before an ALJ.  (AR 18-35.)  Stephen P. Davis, a vocational

16   expert, also appeared at the hearing.  (AR 9; 31-34.)  On July 25, 2008, the ALJ denied Plaintiff

17   benefits.  (AR 9-15.)  The decision of the Social Security Administration (hereinafter "SSA")

18   became final when the Appeals Council adopted the ALJ's findings by decision dated October 6,

19   2008.  (AR 1-3.)  Thereafter, Plaintiff filed the instant action in Federal Court on December 3, 2008.

20   (Doc. 1.)

21                              **III. FACTUAL BACKGROUND**

22        Plaintiff was born on January 12, 1948 and was 57 on the alleged disability onset date of

23   February 4, 2005.  (AR 11.)  From 1986 through February 4, 2005, Plaintiff worked as a social

24   worker supervising the Catastrophic Illness Unit for the city of San Francisco.  (AR 90.)  Plaintiff

25   alleges disability due to hepatitis C, seizure disorder, depression, sleep apnea, ulcer testing, and

26   dermatitis.  (AR 9.)  On February 4, 2005, Plaintiff alleges he stopped working as a result of his

27   ailments.  (AR 89.)  Plaintiff completed high school and college.  (AR 11.)

28   _____

[1]Administrative Record, hereinafter "AR."

1   **1.       <u>Medical Evidence</u>**

2              **a.       <u>Treating Physician Evidence</u>**

3              Starting in 1980, Plaintiff received psychiatric care from Dr. Mark Bernstein for severe

4   clinical depression.  (AR 98.)  On June 16, 2006, Dr. Bernstein completed a Medical Source

5   Statement-Mental.  (AR 251-252.)  Dr. Bernstein concluded the following with regard to Plaintiff's

6   mental disorder: (1) it does not significantly limit his ability to remember and understand detailed or

7   complex instructions; (2) it does not affect his ability to understand and remember short, simple

8   instructions; and (3) it does not significantly limit his ability to carry out instructions and work

9   without supervision.  (AR 251.)  However, Dr. Bernstein concluded Plaintiff's mental disorder

10  impairs his ability to attend and concentrate. (AR 251.)  Specifically, Dr. Bernstein noted Plaintiff

11  has chronic sleep problems and fatigue from his hepatitis C, which result in daytime drowsiness that

12  could interfere with his concentration.  (AR 251.)  Dr. Bernstein also stated Plaintiff has difficulty

13  learning new protocols and adapting to new computers applications.  (AR 252.)  Ultimately, the

14  doctor concluded Plaintiff's prognosis was "good/fair."  (AR 252.)

15             On October16, 2006, Dr. Bernstein completed a Psychiatric Evaluation of Plaintiff.  (AR

16  287-288.)  He concluded Plaintiff was able to participate in a program leading to competitive or

17  gainful employment and said Plaintiff's prognosis for vocational rehabilitation was "excellent."

18  (AR 288.)

19             Plaintiff also received psychological care for severe depression from Dr. Thomas Amberson

20  starting in 2005.  (AR 97.)  On May 24, 2006, Dr. Amberson conducted a Short-Form Evaluation for

21  Mental Disorders.  Dr. Amberson concluded the evidence supports the conclusion Plaintiff's

22  capacity to perform the following activities is impaired: (1) understand, remember, and carry out

23  complex instructions; (2) maintain concentration, attention and persistence; (3) perform activities

24  within a schedule and maintain regular attendance; (4) and respond appropriately to changes in a

25  work setting.  (AR 250.)

26             On December 4, 2006, Dr. Amberson stated Plaintiff's concentration and memory were

27  "fair," and gave Plaintiff an overall prognosis of "fair to poor."  (AR 278, 281.)  Dr. Amberson

28  further concluded Plaintiff was unable to work.  (AR 280.)

### b.      Examining Physician Evidence

On February 16, 2006, Dr. A.W. Lizarraras conducted a Physical Residual Functional Capacity Assessment of Plaintiff by filling out SSA Form 4734-BK.  (AR 221-228.)  He found Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand, walk and sit about 6 hours of an 8-hour workday, and perform unlimited pushing and pulling.  (AR 222.)  The only postural limitation Dr. Lizarraras found was that Plaintiff could never climb ladders/ropes/scaffolds.  (AR 223.)  Dr. Lizarras found no manipulative or visual limitations.  (AR 224.)  Further, Dr. Lizarraras stated Plaintiff complains of mild fatigue from Hepatitis C but refuses treatment.  Accordingly, he concluded the intensity, persistence and functional limitations Plaintiff alleges are not credible when considered pursuant to SSR 96-7p.  (AR 228.)  Also, Dr. Lizarraras reported, "the medical evidence is consistent and documents many physical problems, but none that individually or in combination preclude work for a twelve month period."  (AR 228.)  Therefore, Dr. Lizarraras concluded "the evidence supports a Medium RFC due to fatigue.  More weight is given to the longitudinal evidence[2] that does not support significant physical impairments affecting intensity, persistence or pace."  (AR 228.)

On March 7, 2006, Dr. Clifford Taylor, a clinical psychologist, completed a Psychological Evaluation of Plaintiff at the request of the SSA.  (AR 229-234.)  Dr. Taylor administered the following tests: (1) complete psychological evaluation; (2) trail making tests; (3) test of memory malingering; (4) Wechsler adult intelligence scale; and (5) wide range achievement test.  (AR 229.)  He concluded: "The applicant's ability to understand, remember and carry out job instructions was assessed to be intact and normal as evidenced by his performance on the mental status examination and the memory portions of the testing.  He can complete simple and moderately difficult tasks without impairment."  (AR 233.)  Further, Dr. Taylor found Plaintiff's "ability to maintain attention, concentration, persistence and pace was ...unimpaired as he performed normal on measures of sustained concentration."  (AR 233.)

On January 24, 2007, Dr. Nicholas N. Lin, an internal medicine physician, conducted a Complete Internal Medicine Evaluation of Plaintiff at the request of the SSA.  (AR 291-295.)  Dr.

---

[2] Dr. Lizarraras does not explain what he means by "longitudinal evidence."

Lin found Plaintiff had the RFC to: (1) lift/carry 50 pounds occasionally and 25 pounds frequently; (2) stand, walk or sit for 6 hours in an 8-hour day; and (3) bend, stoop crouch, kneel and climb stairs frequently.  (AR 295.)  He also concluded Plaintiff had no manipulative, communicative, or environmental limitations.  (AR 295.)[3]

### c.    Non-Examining Physician Evidence

On July 3, 2006, Dr. H. Amado completed a Psychiatric Review of Plaintiff.'s records.  (AR 253-266.)  He concluded Plaintiff's mental disorder "ought not preclude the ability to sustain detailed work activity" and that a "detailed or semi-skilled recommendation appears to be a reasonable representation of [Plaintiff's] current residual functional capacity."  (AR 265.)  On that same day, Dr. Amado also completed a Mental Residual Functional Capacity Assessment.  (AR 267-270.)  The only areas in which Dr. Amado concluded Plaintiff was moderately limited was in (1) his ability to maintain attention and concentration for extended periods of time, and (2) in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 267-268.)  Dr. Amado found Plaintiff was not significantly limited in any other areas. (AR 267-268.)

### 2.    Lay Witness Evidence

In a Third Party Function Report, Plaintiff's sister, Nancy Dow, stated Plaintiff had major fatigue problems, which limits his activities.  (AR 145.)  She stated Plaintiff does not cook meals anymore and he does no cleaning at home.  (AR 147.)

### 3.    The Hearing

At the June 16, 2008 hearing before the ALJ, the Plaintiff and vocational expert, Mr. Steven P. Davis, testified.  (AR 19-35.)

### a.    Plaintiff's Testimony

At the hearing, Plaintiff testified he suffers from hepatitis C, depression, sleep apnea, and seizure disorder.  (AR 19-30.)  Plaintiff testified he retired early from his job with the city of San

---

[3]It is unclear from the record why the SSA ordered two separate doctors, Dr. Taylor and Dr. Lin, to assess Plaintiff's RFC.

Francisco because his hepatitis C symptoms were worsening.  (AR 22-23.)  Specifically, Plaintiff testified the hepatitis C caused him to suffer fatigue, loss of sleep, and pain.  (AR 22.)  Plaintiff also testified his job with the city of San Francisco had become more complicated due to computerization, which he was unable to adjust to due to the fatigue and mental confusion caused by both the hepatitis C symptoms and the drugs he took for his depression.  (AR 22-24.)

Plaintiff testified the mental confusion he suffers due to the hepatitis C has gradually worsened since February, 2005.  (AR 25.)  Plaintiff also indicated he continues to experience swelling in his ankles due to the hepatitis C and confusion as a result of taking phenobarbital, his epilepsy medication.  (AR 26.)  Plaintiff did testify, however, that he has not suffered a seizure in 33 years.  (AR 27.)

Specifically with regard to treating his hepatitis C, Plaintiff testified he has not done interferon because it is known to cause depression and he feared aggravating the depression he already experienced.  (AR 28.)  Plaintiff stated a specialist at UC San Francisco told him interferon only had a 15% to18% chance of killing the hepatitis C in his case in light of his age and the time the disease had been in his body.  (AR 28.)  Further, although Plaintiff has not had a biopsy, he testified he had a fibrosure test which indicated his levels were just short of cirrhosis.  (AR 30.)

**b.     The Vocational Expert's Testimony**

Mr. Davis, the vocational expert, testified the skills Plaintiff acquired as an employee for the city of San Francisco could be used in the jobs of food management aide and case aide, which are both defined as light jobs.  (AR 32.)  Specifically, as a food management aide, Mr. Davis stated interviewing skills, knowledge of government agencies, and knowledge of food stamps and general assistance were transferable skills.  With regard to a case aide, Mr. Davis testified knowledge of government work, knowledge of dealing with people, and knowledge of working well in human services governmental programs were transferable skills.  (AR 33.)

Mr. Davis testified that a hypothetical person with the same age as Plaintiff, same educational background, who can work in a medium range with no ladders, ropes, or scaffolds, who needs to avoid concentrated exposure to hazards, and who can do "simple–and moderate–difficult work," could not perform any of Plaintiff's past work.  (AR 31.)  Mr. Davis also testified that a

1   person with the above qualities and limitations, who was either limited to repetitive tasks or

2   sedentary levels of exertion, could not work as a food management aide or case aide. (AR 34.)

3   Similarly, Mr. Davis testified if the person in this hypothetical required unscheduled breaks totaling

4   about 4 hours a week, the individual could not work as a food management aide or case aide. (AR

5   34.)[4]

6        Further, Mr. Davis testified that a hypothetical person, who "because of fatigue and inability

7   to focus and concentrate, is actually going to be producing at much less than what he'd be expected

8   at whatever that assignment would be, and will be producing essentially 70% of expectation,"[5]could

9   not maintain competitive employment as either a food management aide or case aide. (AR 32.)

10  **4.    The ALJ's Findings**

11       After consideration of all the evidence, the ALJ concluded Plaintiff had not been under

12  disability within the meaning of the SSA since his alleged disability onset of February 4, 2005. (AR

13  15.) Specifically, the ALJ found[6]: (1) Plaintiff meets the insured status requirements of the SSA

14  through December 31, 2009; (2) Plaintiff has not engaged in substantial gainful activity since

15  February 4, 2005; (3) Plaintiff has the severe impairments of hepatitis C, depression, and sleep

16  apnea. He also has the non-severe impairments of seizures and bunions; (4) Plaintiff's impairments

17  have not met or equaled the requirements of any listing of the Listing of Impairments; (5) Plaintiff

18  has the residual functional capacity ("RFC") to perform light work with no climbing of ladders,

19  ropes or scaffolds, should avoid concentrated exposure to hazards, and is able to do simple and

20  moderately difficult tasks (translated as unskilled and semiskilled work); (6) Plaintiff is unable to

21  perform any past relevant work; (7) Plaintiff was 57 years old, which is defined as an individual of

22  advanced age, on the alleged disability onset date; (8) Plaintiff has at least a high school education

23  and is able to communicate in English; (9) Plaintiff has acquired work skills from past relevant

24  work; (10) Considering Plaintiff's age, education, work experience, and RFC, Plaintiff has acquired

25  _____

26       [4]The Court notes the record does not indicate Plaintiff is either limited to repetitive or sedentary tasks or requires
    unscheduled breaks.

27

28       [5]This language is taken directly from the hypothetical the ALJ posed to the vocational expert. (AR 32.)

         [6] The following findings are taken directly from the ALJ's decision. (AR 11-15.)

work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy; and (11) Plaintiff has not been under a disability from February 4, 2005 through the present.  (AR 11-15.)

The ALJ's findings reflect he considered opinion evidence, Plaintiff's symptoms, and the extent to which Plaintiff's symptoms were consistent with the objective medical evidence and other evidence.  (AR 13.)  After considering the evidence of record, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment."  (AR 13.)

The ALJ noted the following: Plaintiff quit working because the new computer system at work was too complex; Plaintiff moved from Oakland to San Bernardino in February 2005 for financial reasons; the treating notes from psychiatrist Dr. Bernstein indicate Plaintiff was depressed and felt isolated in San Bernardino because of the lack of a gay community; Plaintiff moved from San Bernardino to San Diego in October 2007; Plaintiff currently takes Phenobarbital for seizures, Librium and Elavil for depression, and Lisinopril for hypertension; Plaintiff's treating psychologist, Dr. Thomas Amberson, Psy.D, gives him a low assessment[7] on December 14, 2006, but his treatment notes show his depression is more situational; and Dr. Bernstein notes Plaintiff's vocational rehabilitation potential is "excellent."  (AR 13.)  Based on the doctors' notes, the ALJ gives Dr. Amberson's poor assessments "little weight."  (AR 13.)  Further, the ALJ concluded "there is no reason why [Plaintiff] could not do 'entry level' food stamps and case aide jobs cited by the VE.  They are a lower level job than his past work as a program specialist, but well within his limitations."  (AR 13.)

## IV. DISCUSSION

**1.    Legal Standard Regarding Review of Denial of Disability Claim**

To qualify for disability benefits under the Social Security Act, applicants must show two things:  (1) They suffer from a medically determinable impairment that can be expected to last for a

---

[7] Dr. Amberson does not define "low assessment."

1  continuous period of twelve months or more, or would result in death; and (2) the impairment

2  renders applicants incapable of performing the work they previously performed or any other

3  substantially gainful employment that exists in the national economy. See 42 U.S.C.A. §§

4  423(d)(1)(A), (2)(A) (West Supp. 2008). An applicant must meet both requirements to be classified

5  as "disabled." Id.

6       Sections 205(g) and 1631(c)(3) of the Social Security Act allow applicants whose claims

7  have been denied by the SSA to seek judicial review of the Commissioner's final agency decision.

8  42 U.S.C.A. §§ 405(g), 1383(c)(3) (West Supp. 2008). The Court should affirm the decision unless

9  "it is based upon legal error or is not supported by substantial evidence." Bayliss v. Barnhart, 427

10  F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)).

11       "Substantial evidence is such relevant evidence as a reasonable mind might accept as

12  adequate to support [the ALJ's] conclusion[,]" considering the record as a whole. Webb v. Barnhart,

13  433 F.3d 683, 686 (9th Cir. 2005) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It

14  means "'more than a mere scintilla but less than a preponderance[]'" of the evidence. Bayliss, 427

15  F.3d at 1214 n.1 (quoting Tidwell, 161 F.3d at 601). "'[T]he court must consider both evidence that

16  supports and the evidence that detracts from the ALJ's conclusion . . . .'" Frost v. Barnhart, 314

17  F.3d 359, 366-67 (9th Cir. 2002) (quoting Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

18       To determine whether a claimant is "disabled," the Social Security regulations use a five-step

19  process outlined in 20 C.F.R. § 404.1520 (2008). If an applicant is found to be "disabled" or "not

20  disabled" at any step, there is no need to proceed further. Ukolov v. Barnhart, 420 F.3d 1002, 1003

21  (9th Cir. 2005) (quoting Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir.

22  2000)). Although the ALJ must assist the applicant in developing a record, the applicant bears the

23  burden of proof during the first four steps. Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir.

24  1999). If the fifth step is reached, however, the burden shifts to the Commissioner. Id. at 1098. The

25  steps for evaluating a claim are as follows:

26          **Step 1.** Is the claimant presently working in a substantially gainful activity?
        If so, then the claimant is "not disabled" within the meaning of the Social Security

27          Act and is not entitled to disability insurance benefits. If the claimant is not working
        in a substantially gainful activity, then the claimant's case cannot be resolved at step

28          one and the evaluation proceeds to step two.

**Step 2.** Is the claimant's impairment severe? If not, then the claimant is "<u>not disabled</u>" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.

**Step 3.** Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "<u>disabled</u>" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.

**Step 4.** Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "<u>not disabled</u>" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

**Step 5.** Is the claimant able to do any other work? If not, then the claimant is "<u>disabled</u>" and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "<u>not disabled</u>" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "<u>disabled</u>" and therefore entitled to disability benefits.

<u>Id.</u> at 1098-99 (footnotes and citations omitted); <u>see also</u> <u>Bustamante v. Massanari</u>, 262 F.3d 949, 954 (9th Cir. 2001) (giving an abbreviated version of the five steps).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C.A. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. <u>Id.</u> After a case is remanded and an additional hearing is held, the Commissioner may modify or affirm the original findings of fact or the decision. <u>Id.</u>

"If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary." <u>Flaten v. Sec'y Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)

//

1    //

2    **2.    Medical Evidence**

3    Plaintiff contends the ALJ failed to properly consider all the available relevant medical

4    evidence and inappropriately minimized certain medical evidence contained within the

5    Administrative Record.  (Doc. 10-2 at 2.)  Specifically, Plaintiff contends the ALJ: (1)

6    inappropriately minimized the effect of Plaintiff's Hepatitis C infection (Id. at 3); (2) improperly

7    disregarded without comment the findings of a state agency reviewing physician who found Plaintiff

8    was moderately limited in his ability to complete a normal work day and work week without

9    interruptions (Id. at 4); and (3) incorrectly failed to consider several assessments by Plaintiff's

10   treating physicians.  (Id.)

11   Defendant contends Plaintiff fails to demonstrate the ALJ committed reversible error in

12   evaluating his Hepatitis C and properly rejected the opinion from Plaintiff's treating physician.

13   (Doc. 12-2 at 3-6.)

14        **a.    Minimizing Effects of Hepatitis C**

15   Plaintiff contends the ALJ failed to properly consider Plaintiff's level of fatigue resulting

16   from Hepatitis C.  (Doc. 10-2. at 3.)  Plaintiff asserts he has repeatedly undergone blood tests, which

17   have consistently shown his Hepatitis C virus is active and at extremely high levels.  (Id.)  Further,

18   Plaintiff indicates the record chronicles Plaintiff's continuous complaints of abdominal pain from his

19   liver and chronic fatigue resulting from the Hepatitis C.  (Id.)  Plaintiff argues the ALJ has not cited

20   any evidence disputing Plaintiff's diagnosis or reported symptoms.  (Id.)  Rather, Plaintiff contends

21   the ALJ has inappropriately minimized the effect of his hepatitis C by referring to Plaintiff's

22   decision to decline interferon treatment for his infection.  (Id.)  Further, although the ALJ reduced

23   Plaintiff's RFC from medium to light, Plaintiff asserts the ALJ improperly disregarded the effect

24   Plaintiff's fatigue has on his ability to sustain activities of daily living and work.  (Id. at 4.)

25   Defendant contends Plaintiff does not dispute the ALJ's observation that the record

26   contained no clear limitations related to Hepatitis C, and thereby fails to demonstrate the ALJ

27   committed reversible error in assessing Plaintiff's Hepatitis C.  (Doc. 12-2 at 4.)

28   The ALJ has primary responsibility for assessing a claimant's RFC.  See Vertigan v. Halter,

1   260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. § 404.1545.  The ALJ is not limited to considering

2   only medical evidence in determining a claimant's RFC; RFC is a function-by function inquiry

3   based on all of the relevant evidence of a claimant's ability to do work-related activity.  Shafer v.

4   Barnhart, 120 Fed. Appx. 688, 697 (9th Cir. 2005).  In fact, the Ninth Circuit holds that in

5   determining RFC, the agency must consider all relevant evidence, including medical records, lay

6   evidence, and subjective complaints.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir.

7   2006).  Thus, in determining RFC, the ALJ must consider subjective symptoms such as fatigue and

8   pain.  Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996); see SSR 88-13; 20 C.F.R. §

9   404.1529(d).  In carrying out this responsibility, the ALJ must make specific RFC findings, and each

10   finding must include a discussion of the evidence which supports it.  See Fleetwood v. Barnhart, 211

11   Fed. Appx. 736, 739 (10th Cir. 2007).

12       Here, after careful consideration of the entire record, the ALJ found Plaintiff has the RFC to

13   perform light work with no climbing of ladders, ropes or scaffolds.  (AR 12.)  The ALJ concluded

14   Plaintiff should avoid concentrated exposure to hazards and is able to do simple and moderately

15   difficult tasks.  (AR 12.)  In making this finding, the ALJ stated he "considered all symptoms and the

16   extent to which these symptoms can reasonably be accepted as consistent with the objective medical

17   evidence and other evidence...[He] also considered opinion evidence in accordance with the

18   requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p."  (AR 13.)

19   Specifically, the ALJ stated "there is no reason why claimant could not do 'entry level' food stamps

20   and case aide jobs cited by the VE.  They are a lower level job than his past work as a program

21   specialist, but well within his limitations, according to the VE testimony."  (AR 13.)[8]

22       With regard to Plaintiff's Hepatitis C, the ALJ stated: "Claimant testified that he declined

23   interferon treatment for Hepatitis C because he was concerned about the treatment causing

24   depression.  He also testified that a doctor at UCSF told him there was only about a 15-18% chance

25   that the interferon treatment would work, considering his age and estimated time he has had

26   Hepatitis C, which was about 38 years.  He has not had a biopsy for Hepatitis C.  However, on April

27   _____

28       [8] The Court notes the ALJ did not pose any hypotheticals to the VE assuming a light RFC, which the ALJ ultimately
    assigned to Plaintiff.  In light of the fact Plaintiff did not raise this issue in his motion for summary judgment, the Court does
    not address this issue.

25, 2008, he did have a lab test called 'fibrosure,' which showed that his fibrosis score was 'high,' just short of cirrhosis." (AR 11-12.)  Based on the record, the ALJ found "there are no clear limits or duration resulting from [Plaintiff's] hepatitis C."  (AR 12.)  Nonetheless, the ALJ decided to give Plaintiff "the benefit of the doubt with regard to hepatitis C by reducing the RFC from medium to light." (AR 12.)

The Court finds the ALJ properly considered Plaintiff's Hepatitis C.  First, in assessing Plaintiff's RFC, the ALJ specifically considered both the medical treatment Plaintiff sought and rejected for Hepatitis C. (AR 11-12.)   Despite Plaintiff's subjective complaints of fatigue resulting from the Hepatitis C, the ALJ concluded the record was devoid of any clear limitations Plaintiff suffered as a result of his infection.  See Vertigan, 260 F.3d at 1049 (the ALJ has the primary responsibility for assessing a claimant's RFC).  Nevertheless, the ALJ reduced Plaintiff's RFC from medium to light because of his Hepatitis C.  (AR 12.)  Second, the ALJ considered more than medical evidence in determining Plaintiff's RFC.  Robbins., 466 F.3d at 883 (agency must consider all relevant evidence, including medical records, lay evidence, and subjective complaints, to determine RFC).  The ALJ relied on the VE's testimony in concluding Plaintiff could perform entry level food stamps and case aide jobs, as they are well within his limitations.  (AR 13.)

Accordingly, the Court finds the ALJ adequately considered Plaintiff's subjective complaints of fatigue in determining Plaintiff's RFC.  Thus, the Court RECOMMENDS Plaintiff's motion for summary judgment be DENIED and Defendant's cross-motion for summary judgment be GRANTED as to this issue.

**b.      Disregarding Findings of State Agency**

Plaintiff contends the ALJ committed reversible error in disregarding the findings of a state agency reviewing physician[9] who found Plaintiff was moderately limited in his "ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (Doc. 10-2 at 4; AR 267-68.)  Plaintiff maintains this limitation is consistent with his subjective statements

---

[9]Plaintiff is referring to Dr. Amado, who completed a Psychiatric Review of Plaintiff on July 3, 2006.  (AR 253-267.)

1  regarding his fatigue, pain, and resulting inability to sustain full time competitive employment.

2  (Doc. 10-2 at 4.)

3      Defendant contends the Ninth Circuit holds moderate limitations are not evidence of a

4  disabling impairment and therefore need not be presented to a vocational expert.  (Doc. 12-2 at 5.)

5  Further, Defendant argues Dr. Amado, the doctor who assessed the moderate limitation in question,

6  concluded Plaintiff was not precluded from "sustain[ing] detailed work activity."  (Id.; AR 267-69.)

7      "Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians:

8  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

9  claimant (examining physicians); and (3) those who neither examine nor treat the claimant

10  (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

11  The opinions of treating doctors are generally given more weight than the opinions of nontreating

12  doctors.  Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  The opinion of an

13  examining doctor is entitled to greater weight than that of a nonexamining doctor.  Id. (citing Pitzer

14  v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984)).

15  However, "[t]he findings of a nontreating, nonexamining physician can amount to substantial

16  evidence, so long as other evidence in the record supports those findings."  Saelee v. Chater, 94 F.3d

17  520, 522 (9th Cir. 1996).  The nonexamining physician's opinion must be "supported by other

18  evidence in the record and [be] consistent with it."  Morgan, 169 F.3d 595, 600 (9th Cir. 1999).

19      Administrative law judges are not bound by any findings made by state agency medical or

20  psychological consultants.  20 C.F.R. § 404.1527.  Because reviewing physicians do not consider

21  subjective factors, such as pain and fatigue, in determining the claimant's work ability, courts have

22  found their conclusions to be of limited value.  Penny v. Sullivan, 2 F.3d 953, 957 (9th Cir. 1993).

23  However, state agency medical consultants and other program physicians are highly qualified

24  physicians who are also experts in social security disability evaluation.  (Id.)  Accordingly,

25  "[f]indings of fact made by State agency medical and psychological consultants...regarding the

26  nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of

27  nonexamining sources at the administrative law judge and Appeal Council levels of administrative

28  review."  Social Security Ruling § 96-6p.  Further "administrative law judges and the Appeal

1    Council may not ignore these opinions and must explain the weight given to these opinions in their

2    decisions."  (Id.)

3        The ALJ is not required to discuss each item of evidence, but the record should indicate that

4    all evidence presented was considered.  Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000); Clifton v.

5    Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  The reviewing court must "consider the record as a

6    whole, weighing both evidence that supports and evidence that detracts from the Secretary's

7    conclusion."  Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

8        In his review of Plaintiff's Social Security file, Dr. Amado concluded Plaintiff was

9    moderately limited in (1) his ability to maintain attention and concentration for extended periods of

10   time, and (2) his ability to complete a normal workday and workweek without interruptions from

11   psychologically based symptoms and to perform at a consistent pace without an unreasonable

12   number and length of rest periods.  (AR 268.)  However, Dr. Amado also concluded Plaintiff's

13   mental disorder "ought not preclude the ability to sustain detailed work activity" and that a "detailed

14   or semi-skilled recommendation appears to be a reasonable representation of [Plaintiff's] current

15   residual functional capacity."  (AR 265.)

16       Here, the ALJ neither addressed nor explained the weight given to Dr. Amado's opinion.

17   Rather, the ALJ made his final RFC determination based on the opinions of Plaintiff's treating

18   physicians, Dr. Amberson and Dr. Bernstein.  (AR 13.)  However, Dr. Amado's opinion, as detailed

19   above, was a part of the record the ALJ reviewed.  (AR 267-269.)  Importantly, the ALJ and other

20   physicians came to the same conclusion as Dr. Amado.  The ALJ determined Plaintiff is capable of

21   performing unskilled and semiskilled work.  (AR 12.)  Dr. Bernstein concluded Plaintiff's prognosis

22   for vocational rehabilitation is excellent.  (AR 288.)  Dr. Lizarraras concluded the evidence

23   "supports a Medium RFC due to fatigue."  (AR 228.)  Based on Dr. Amado's, the ALJ's, and other

24   physicians' identical conclusion with regard to Plaintiff's RFC, any error the ALJ made in

25   disregarding Dr. Amado's opinion was harmless, and the court will not reverse an ALJ's decision

26   for harmless error, which exists when it is clear from the record that "the ALJ's error was

27   inconsequential to the ultimate nondisability determination."  Robbins, 466 F.3d at 885.

28       Accordingly, the Court finds the ALJ did not commit reversible error in disregarding the

1  state agency reviewing physician's findings . Thus, the Court RECOMMENDS Plaintiff's motion

2  for summary judgment be DENIED and Defendant's cross-motion for summary judgment be

3  GRANTED as to this issue.

4       **c.     Disregarding Findings of Treating Physician**

5       Plaintiff contends the ALJ erred in ignoring several assessments made by Plaintiff's treating

6  physicians without clear and convincing reasons. (Doc. 10-2 at 4-5.) Specifically, Plaintiff asserts

7  the ALJ improperly ignored the following assessments: (1) Dr. Bernstein's reports Plaintiff had

8  impairments in his ability to sustain concentration and task persistence, interact with supervisors,

9  and adapt to changes in the work place; and (2) Dr. Amberson's opinion Plaintiff handles stress

10  poorly, is unable to work, and has a prognosis of fair to poor. (Id. at 5.)

11       Defendant contends the ALJ properly rejected the opinion of Plaintiff's treating physician,

12  Dr. Amberson, that Plaintiff was unable to work. (Doc. 12-2 at 5-6.)

13       Opinions of treating physicians may only be rejected under certain circumstances. See

14  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). "[W]here the treating

15  doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and

16  convincing' reasons." Lester, 81 F.3d at 830 (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th

17  Cir. 1991)); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). "Even if the treating

18  doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion

19  without providing 'specific and legitimate reasons' supported by substantial evidence in the record .

20  . . ." Lester, 81 F.3d at 830 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

21  Moreover, the opinion of an examining doctor is entitled to greater weight than that of a

22  nonexamining doctor. Id. (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v.

23  Heckler, 753 F.2d 1450 (9th Cir. 1984)). However, "[t]he findings of a nontreating, nonexamining

24  physician can amount to substantial evidence, so long as other evidence in the record supports those

25  findings." Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). The nonexamining physician's

26  opinion must be "supported by other evidence in the record and [be] consistent with it." Morgan,

27  169 F.3d 595, 600 (9th Cir. 1999.)

28       "In addition, the regulations give more weight to opinions that are explained than to those

that are not . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists . . . ." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1527(d)(3), (5)).  "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings . . . ." Batson, 359 F.3d at 1195 (citing Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)).  The ALJ is not required to discuss each item of evidence, but the record should indicate that all evidence presented was considered.  Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000); Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The reviewing court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion."  Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

Here, the ALJ provided clear and convincing reasons based on substantial evidence for rejecting the opinion of Plaintiff's treating physician, Dr. Amberson.  The ALJ stated: "Claimant's treating psychologist, Dr. Thomas Amberson, Psy.D., gives [Plaintiff] a low assessment...But the treatment notes show that his depression is more situational...[T]reating psychiatrist, Dr. Mark Bernstein noted that claimant's vocational rehabilitation potential is 'excellent.'  Therefore, I give these poor assessments...little weight because they are unsupported."  (AR 13.)

Thus, the Court finds the ALJ did not commit legal error by rejecting the opinion evidence of Plaintiff's treating physician and the ALJ's decision is supported by substantial evidence. Accordingly, the Court RECOMMENDS Plaintiff's motions for summary judgment be DENIED and Defendant's cross-motion for summary judgment be GRANTED as to this issue.

**3.   Credibility**

Plaintiff contends the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's subjective complaints of pain, fatigue, medication side effects, depression and mental confusion and thereby his assessment of Plaintiff's credibility constitutes reversible error.  (Doc. 10-2 at 6-10.)  Specifically, Plaintiff asserts the ALJ failed to (1) specify which allegations he found not credible,  (2) apply the factors of Social Security Ruling 96-7p, and (3) consider third party reports regarding Plaintiff's symptoms and limitations.  (Id. at 8.)  Further, Plaintiff contends the ALJ did

1   not cite any affirmative evidence of malingering or symptom magnification by Plaintiff.  (Id. at 7.)

2       Defendant contends the ALJ provided an adequate basis upon which he found Plaintiff's

3   subjective statements not credible.  (Doc. 12-2 at 6-9.)

4       In evaluating the credibility of a claimant's testimony, an ALJ must engage in a two-step

5   analysis.

6           "First, the ALJ must determine whether the claimant has presented objective medical
            evidence of an underlying impairment which could reasonably be expected to produce the
7           pain or other symptoms alleged."  The claimant is not required to show that her impairment
            "could reasonably be expected to cause the severity of the symptom she has alleged; she
8           need only show that it could reasonably have caused some degree of the symptom."  If the
            claimant meets the first test and there is no evidence of malingering, the ALJ can only reject
9           the claimant's testimony about the severity of the symptoms if she gives "specific, clear, and
            convincing reasons" for the rejection.

10  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citations omitted) (quoting Lingenfelter, 504

11  F.3d at 1036).

12          The ALJ may consider many factors in weighing a claimant's credibility, including
            "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,
13          prior inconsistent statements concerning the symptoms, and other testimony by the claimant
            that appears less than candid; (2) unexplained or inadequately explained failure to seek
14          treatment or to follow a prescribed course of treatment; and (3) the claimant's daily
            activities."  If the ALJ's finding is supported by substantial evidence, the court "may not
15          engage in second-guessing."

16  Tommasetti v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citations omitted); see also Bray, 554 F.3d

17  at 1226-27; 20 C.F.R. §§ 404.1529, 416.929.  Other factors include a claimant's work record and

18  testimony from physician's and third parties concerning the nature, severity, and effect of the

19  symptoms of which he complains.  Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

20      "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony

21  regarding severity of an impairment."  Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007).

22  However, " although a conservative course of treatment can undermine allegations of debilitating

23  pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a

24  good reason for not seeking more aggressive treatment.  Carmickle v. Comm'r Soc. Sec. Admin.,

25  533 F.3d 1155, 1162 (9th Cir. 2008) (holding claimant's minimal treatment regime was not proper

26  basis for finding him not credible; claimant did not take other pain medication besides Ibuprofen

27

28

because of adverse side effect); see also Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).[10]

"Lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence ... and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1996) (citations omitted). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919; see also Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)). However "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

The ALJ stated: "After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (AR 13.) The ALJ noted Plaintiff quit working because the new computer system at work was too complicated and he took retirement in the amount of $2100/month after working for the City of San Francisco for 30 years. (AR 13.) Further, as previously discussed, the ALJ noted Dr. Bernstein's opinion that Plaintiff's vocational rehabilitation potential was "excellent" and rejected Dr. Amberson's low assessment of Plaintiff as "unsupported." (Id.) The ALJ also considered the fact that Plaintiff declined interferon treatment for Hepatitis C because he was concerned about the treatment causing depression. (AR 11.)

### 1.    Refusal of Interferon Treatment

Here, the ALJ improperly discounted Plaintiff's credibility on the basis of him declining

---

[10]Although these cases focus primarily on the credibility of claimants' complaints of pain, the cases are applicable in the context of complaints of fatigue as well.

1    interferon treatment for Hepatitis C.  (AR 11.)  According to Plaintiff, he declined the interferon

2    treatment because it is known to cause depression and he feared aggravating the depression from

3    which he already suffered.  (AR 28.)  Plaintiff further testified a specialist at UC San Francisco told

4    him interferon only had a 15% to 18% chance of killing the hepatitis C in his case due to his age and

5    the time the disease had been in his body.  (AR 28.)  Although Plaintiff's choice not to undergo

6    interferon may have undermined his allegations of fatigue, it was not the proper basis for rejecting

7    Plaintiff's credibility because he gave a good reason for not seeking the treatment.  Carmickle, 533

8    F.3d at 1162.

9         Despite the foregoing, the fact that one of the reasons for discrediting a claimant's testimony

10   should properly be discounted does not render the ALJ's credibility determination invalid, as long as

11   that determination is supported by substantial evidence in the record overall.  See Tonapetyan v.

12   Halter, 242 F.3d 1144, 1148 (9th Cir.2001); see also Carmickle, 533 F.3d at 1162 ("Because we

13   conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we

14   must determine whether the ALJ's reliance on such reasons was harmless error."); Batson v.

15   Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir.2004) (concluding that, even if the

16   record did not support one of the ALJ's stated reasons for disbelieving claimant's testimony, error

17   was harmless).

18        Here, although the ALJ improperly relied upon Plaintiff's lack of Hepatitis C treatment, the

19   ALJ's error was harmless because substantial evidence otherwise supports the ALJ's credibility

20   determination.  For example, contrary to Plaintiff's assertion he stopped working due to his

21   disability, the ALJ noted Plaintiff quit working because the new computer system at work was too

22   complex. (AR 13.)  Second, the ALJ noted Dr. Bernstein, Plaintiff's treating psychiatrist for over 25

23   years, stated Plaintiff's vocational rehabilitation potential was "excellent."  (AR 13.)  Further, both

24   Dr. Amado's and Dr. Taylor's assessments of Plaintiff mirror Dr. Bernstein's and the ALJ's

25   conclusions.  Dr. Taylor concluded Plaintiff's "ability to understand, remember and carry out job

26   instructions..to be intact and normal as evidenced by his performance on the mental status

27   examination and the memory portions of the testing.  He can complete simple and moderately

28   difficulty tasks without impairment."  (AR 233.)  Similarly, based on a psychiatric review of

Plaintiff, Dr. Amado concluded a "Detailed or semi-skilled recommendation appears to be a reasonable representation of [Plaintiff's] current residual functional capacity."  (AR 265.) Therefore, the ALJ provided clear and convincing reasons, based on substantial evidence, supporting his credibility determination.

### 2. Sister's Third Party Reports

Here, the ALJ improperly disregarded Plaintiff's sister's reports regarding Plaintiff's subjective complaints and limitations.  In a Third Party Function Report, Plaintiff's sister, Nancy Dow, stated Plaintiff has major fatigue problems, which severely limit his activities.  (AR 145.)  She stated Plaintiff does not cook meals anymore and he does no cleaning at home.  (AR 147.) However, the ALJ disregarded Ms. Dow's reports without providing a reason for doing so.  Nguyen, 100 F.3d at 1467 (concluding that lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment).

Although the ALJ improperly disregard Plaintiff's sister's reports of Plaintiff's limitations, the ALJ's error was harmless because substantial evidence otherwise supports the ALJ's credibility determination.  As discussed in further detail above, the ALJ noted Plaintiff quit working due to the complexity of the computer system at work and Dr. Bernstein concluded Plaintiff was highly capable of vocational rehabilitation.  Both of these conclusions are supported by Dr. Taylor's and Dr. Amado's conclusions regarding Plaintiff's abilities.  Thus, the Court can confidently conclude that "no reasonable ALJ, when fully crediting the [lay] testimony, could have reached a different disability determination."  Stout, 454 F.3d at 1056.

Based thereon, the ALJ did not commit legal error in his credibility determination and his decision is supported by substantial evidence.  Accordingly, the Court RECOMMENDS Plaintiff's motion for summary judgment be DENIED and Defendant's cross-motion for summary judgment be GRANTED as to this issue.

### V. CONCLUSION

After a thorough review of the record in this matter and based on the foregoing analysis, this Court RECOMMENDS:

//

1        (1)    With regard to the ALJ's consideration of Plaintiff's subjective complaints of fatigue,

2  the Court RECOMMENDS Plaintiff's motion for summary judgment be DENIED and Defendant's

3  cross-motion for summary judgment be GRANTED as to this issue.

4        (2)    With regard to the ALJ disregarding the state agency reviewing physician's findings,

5  the Court RECOMMENDS Plaintiff's motion for summary judgment be DENIED and Defendant's

6  cross-motion for summary judgment be GRANTED as to this issue.

7        (3)    With regard to the ALJ rejecting the opinion evidence of Plaintiff's treating

8  physician, the Court RECOMMENDS Plaintiff's motion for summary judgment be DENIED and

9  Defendant's cross-motion for summary judgment be GRANTED as to this issue.

10        (4)    With regard to the ALJ's adverse credibility determination, the Court

11  RECOMMENDS Plaintiff's motion for summary judgment be DENIED and Defendant's cross-

12  motion for summary judgment be GRANTED as to this issue.

13        This Report and Recommendation of the undersigned Magistrate Judge is submitted to the

14  United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §

15  636(b)(1) (2007) and Local Rule 72.1(d).

16        IT IS HEREBY ORDERED that **no later than December 21, 2009**, any party may file and

17  serve written objections with the Court and serve a copy on all parties.  The document should be

18  captioned "Objections to Report and Recommendation."

19        IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no**

20  **later than ten days** after being served with the objections.  The parties are advised that failure to

21  file objections within the specified time may waive the right to raise those objections on appeal of

22  the Court's order.  Martinez v. Y1st, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

23        **IT IS SO ORDERED.**

24  DATED:  December 1, 2009

25

26  LOUISA S PORTER
    United States Magistrate Judge

27

28  cc:      The Honorable Michael M. Anello
          all parties